JUDGE STANTON

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

14 CV 9433

NEXUS GROUP, LLC, a Virgin )
Islands limited liability company, )
)
                Plaintiff, )
)
          v. )   No.
)
PRIME LINE NUTRA, LLC, a New )
York limited liability company, and )
BIOGENICS DIRECT, LLC, a )
Florida limited liability company, )
)
                Defendants. )

RECEIVED NOV 26 2014 U.S.D.C. S.D.N.Y. CASHIERS

## COMPLAINT

Kiran Patel
Dentons US LLP
1221 Avenue of the Americas
25th Floor
New York, New York 10021
Telephone: (212) 768-5392
Facsimile: (212) 768-6800
kiran.patel@dentons.com

Kenneth J. Pfaehler
Dentons US LLP
1301 K Street, N.W.
Suite 600, East Tower
Washington, D.C. 20005
Telephone: (202) 408-6468
Facsimile: (202) 408-6399
kenneth.pfaehler@dentons.com

Dated: November 26, 2014

Plaintiff Nexus Group, LLC, a Virgin Islands limited liability company ("Nexus Group" or "Plaintiff"), by and through its undersigned counsel, for its Complaint against Prime Line Nutra, LLC, a New York limited liability company ("Prime Line Nutra") and Biogenics Direct, LLC, a Florida limited liability company ("Biogenics" and, collectively, the "Defendants"), states as follows:

## NATURE OF THE ACTION

1. This is an action for breach of contract, promissory estoppel and unjust enrichment, brought against defendants Prime Line Nutra and Biogenics, related entities that requested and accepted advertising services from the Nexus Group, initially made payments to induce the Nexus Group to supply additional advertising, and then failed to pay for such advertising. Even after they stopped paying invoices when due, Prime Line Nutra and Biogenics induced Nexus Group to provide additional advertising by promising to catch up on payments. Despite their promises, the Defendants now have refused to make further payments. At present, Prime Line Nutra and Biogenics have not paid $568,632 in invoices for advertising that Nexus Group provided, despite that Defendants do not contest the accuracy of the invoices or their obligations to pay them.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) & (c)(1). There is complete diversity of citizenship between

the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3. Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(b), because defendant Prime Line Nutra resides in this district.

## PARTIES

4. Plaintiff Nexus Group is a limited liability company organized under the laws of the United States Virgin Islands and with a principal place of business in the United States Virgin Islands.

5. Defendant Prime Line Nutra is a New York limited liability company. The registered agent for Prime Line Nutra is the New York Secretary of State. The Articles of Incorporation for Prime Line Nutra state that the address "within or without this state to which the Secretary of State shall mail a copy of any process against the limited liability company served upon him or her is: Prime Line Nutra, LLC, 801 Second Avenue - 19th Floor, New York, NY 10017." Prime Line Nutra also has a place of business at 1250 East Hallandale Beach Boulevard, Suite 406, Hallandale Beach, Florida 33009. On information and belief, Blake R. Ruderman is a member of Prime Line Nutra. Blake R. Ruderman holds himself out as an officer and representative of Prime Line Nutra.

6. Biogenics is a Florida limited liability company. On information and belief, Svetlana Ruderman serves as a Managing Member, and has interests in

numerous other related corporate entities. The other member of Biogenics is BESVE Media, Inc., a New York corporation, which also serves as a Managing Member. The registered agent for Biogenics is Svetlana Ruderman's husband Carl Ruderman. On information and belief, Carl Ruderman is a shareholder and director of BESVE Media, Inc. On information and belief, Blake R. Ruderman is the son of Svetlana and Carl Ruderman. On information and belief, both Biogenics and Prime Line Nutra are part of an extensive family of over 20 similarly-controlled limited liability companies, which are controlled or owned directly or indirectly, by the Rudermans and BESVE Media, Inc.

## FACTUAL ALLEGATIONS

7. Nexus Group is an internet advertising agency and marketing consultant. Nexus Group provides advertising on social media network websites such as Facebook, with click-on links that permit traffic to be directed to the websites of its customers. Nexus Group's advertising allows its clients to reach their target audiences anywhere in the world on over 700 social networks in numerous languages. Nexus Group's technology permits its clients to measure their return from different networks and campaigns in real time, and thereby to adjust and maximize the benefit of their ongoing advertising campaigns.

8. On or about April 17, 2014, Nexus Group entered into an agreement with Prime Line Nutra pursuant to which Nexus Group agreed to provide its

3

advertising services to Prime Line Nutra. Nexus Group did not require payment in advance, in consideration of Prime Line Nutra's agreement to weekly invoicing with "Net 15" terms, meaning that the invoices would be paid within 15 days of their receipt.

9. Prime Line Nutra markets health-related dietary supplements. Prime Line Nutra's products are sold through pop-up advertisements on social media networks. For instance, Prime Line Nutra markets on Facebook and other social media networks a product called "Regula RX," which purports to be a colon cleansing product that "eliminates constipation," flattens the stomach, "kick-start[s] weight loss," increases energy and causes its takers to "look and feel great." Among other products, Prime Line Nutra purchased the pop-up advertising services of Nexus Group to market Regula RX on Facebook and other social media networks.

10. The Nexus Group's first invoices to Defendants were sent as PDF attachments to an email sent on May 12, 2014 by Chase Herro of the Nexus Group to Blake Ruderman and Alan Heide at Prime Line Nutra. The first invoice, numbered N1201, for advertising provided between April 14 and April 20, 2014, invoiced $344. The second invoice, N1202, for advertising provided between April 21 and April 27, 2014, invoiced $163,830. The third invoice, N1203, for advertising provided between April 28 and May 4, 2014, invoiced $342,237. Mr.

Herro's cover email stated that "On the weekly Net 15 terms, 2 of these invoices would be due." It also requested that Nexus Group's controller, Jean Neftin, who was copied on the email, "create an invoice for May 5th-May 11th (Due the 26th)." The cover email also asked Mr. Ruderman and Mr. Heide "what company information to put on the invoices."

11. On May 12, 2014, Blake Ruderman responded with an email directing Prime Line Nutra's controller Alan Heide to respond "with billing company after your meeting." Mr. Ruderman also accepted the three invoices sent and their terms, stating "All 3 invoices are correct . . . Thanks!!"

12. On May 12, 2014, at 5:14 p.m., Alan Heide with the Defendants advised Nexus Group to invoice Prime Line Nutra. He asked Nexus Group to complete a W-9 tax form, and advised that "Upon receipt, will send a wire tomorrow for payment of the first two invoices." Mr. Heide's signature line identified him as the controller for "Prime Line Nutra/Digi South."

13. On May 13, 2014, Mr. Heide sent an email to Jean Neftin that was identified as coming from "BIOGENICS DIRECT, LLC." The email stated:

> You have been sent an electronic payment in the amount of $164174.00. This payment is for invoice N1201and N1202.
>
> If you have questions regarding this payment, please call BIOGENICS DIRECT, LLC at 3052241490 for assistance.

Thank you,

BIOGENICS, LLC.

14. On May 13, 2014, a wire transfer payment in the amount of $164,174 was received by Nexus Group from Biogenics.

15. On May 19, 2014, Mr. Heide sent an email to Chase Herro and Jean Neftin stating that "FYI, Today we are sending a wire in payment of invoice N1203. Expect the funds to be deposited sometime tomorrow." The email was signed by Mr. Heide as Controller of "Prime Line Nutra/Digi South."

16. On May 20, 2014, Mr. Heide sent an email to Mr. Neftin that again was identified as coming from "BIOGENICS DIRECT, LLC." The email stated:

> You have been seen an electronic payment in the amount of $342237.00. This payment is for invoice N1203.
>
> If you have questions regarding this payment, please call BIOGENICS DIRECT, LLC at 3052241490 for assistance.
>
> Thank you,
>
> BIOGENICS, LLC.

17. On May 20, 2014, a wire transfer payment in the amount of $342,237 was received by Nexus Group from Biogenics.

18. On May 15, 2014, Mr. Neftin forwarded to Blake Ruderman and Alan Heide by email Nexus Group invoice N1209, for the period May 5 to May 11, in the amount of $246,046. On June 3, 2014, Mr. Heide sent an email to Mr. Neftin

that was identified as coming from "BIOGENICS DIRECT, LLC." The email stated:

> You have been sent an electronic payment in the amount of $246046.00. This payment is for invoice N1209.
>
> If you have questions regarding this payment, please call BIOGENICS DIRECT, LLC at 3052241490 for assistance.
>
> Thank you,
>
> BIOGENICS DIRECT, LLC.

19. On June 3, 2014, a wire transfer payment in the amount of $246,046 was received by Nexus Group from Biogenics.

20. On May 21, 2014, Nexus Group sent invoice N1221 to Prime Line Nutra for the period May 13-May 20, 2014, in the amount of $264,450. Emails were exchanged when payment was not received by the due date, June 5, 2014. On June 11, 2014, Mr. Heide sent an email advising that the "wire I requested yesterday has not been processed due to a technical issue at our bank with our online platform." Mr. Heide then advised that "I will need to send you a check via FedEx tonight for tomorrow AM delivery. Should I send it to the New Jersey address?" Mr. Neftin replied by email asking Mr. Heide to send the check to "the Nexus Group, LLC, 32 Ann Street, Clifton, New Jersey 07013." Check number 100889, written on Biogenics' account with Bank of America in the amount of $264,450, was received at the Clifton address and negotiated on June 6, 2014.

21. Following the payment for invoice N1221, Nexus Group's invoices to Prime Line Nutra were paid by checks written on the Biogenics account at Bank of America, and sent by Federal Express to the Nexus Group at 32 Ann Street, Clifton, New Jersey 07013. The payments included Biogenics checks received on June 16 for invoice N1230 ($159,745, check # 100892), on June 19 for invoice N1238 ($183,309, check # 100895), on June 30 for invoice N1246 ($185,115, check # 100918), on July 8 for invoices N1256 and N1261 ($215,645, check # 100939), on July 14 for invoice N1262 ($288,659) and on July 19 for invoice N1267 ($169,162 check # 100951). All of the checks were negotiated and paid.

22. As of July 19, 2014, all invoices to Prime Line Nutra had been paid within 11 days or less of the due date, on every occasion by a wire transfer or check from Biogenics. Defendants were pressing Nexus Group to deliver even more traffic to their websites. On July 23, an employee of Prime Line Nutra sent a Skype message that "Blake wants to do everything possible to get traffic back up 1k step 1 per day." On July 25, Mr. Ruderman sent a Skype message urging that "we have unlimited cap on all the offers you guys can go nutz". On July 30, Mr. Ruderman sent a Skype message to Mr. Folkma that "you should push our (flex0 offers[.] I'm getting a ton of sales form other networks all of a sudden." With daily requests and messages from Prime Loine Nutra, and based on the payments

8

mad by Biogenics through July 19, Nexus Group continued to provide advertising on social networks for Prime Line Nutra through August 7, 2014.

23. However, after paying invoice N1267 on July 19, 2014, the Defendants never made a payment again, even while urging the Nexus Group to provide even more traffic and advertising services.

24. Advertising was provided and invoiced by emails sent by Jean Neftin to Alan Heide on July 7 (invoice N1276 for $140,094), July 14 or 15 (invoice N1282 for $146,415), July 21 (invoice N1286 for $175,483), July 28 (N1291 for $79,421), August 4 (N1296 for $24,338), August 7 (N1299 for $2,236) and August 11 (N1300 for $645). None of these amounts have been paid. The Defendants have not disputed the accuracy of any of these invoices or that they are responsible for paying them. Defendants never told Nexus Group to stop providing advertising, or that Defendants might not pay for such advertising.

25. On Monday, July 28, 2014, Mr. Neftin sent an email to Mr. Heide, copying Mr. Ruderman, asking Mr. Heide to "please give me an update regarding the payment for invoice" N1276, which was then 6 days past due. About an hour later Mr. Heide responded as follows:

> Hi Jean,
>
> Sorry for the delay in responding. Not that this is an excuse, but, the ups and downs in the industry have caused slower than expected cash receipts. I expect to

> pay this invoice on Wednesday. I apologize for the tardiness.
>
> Regards,
>
> AH

26. Despite Mr. Heide's commitment, invoice N1276 was not paid on July 30.

27. On July 31, Mr. Herro texted Blake Ruderman:

> I saw your guy you needed more time on the bills due. We have no issues with that. Just have to ask, things all good[?] We have like $500l out with you guys ATM. That's not in jeopardy is it? I'm sure it's not I just I have to ask or I wouldn't be doing my job.

Blake Ruderman responded "Your good bro." Later on the 31st, Blake Ruderman texted Mr. Herro: "Just have jean stay on top of Alan . . Squeaky wheel always gets the oil first."

28. Also on July 31, Mr. Heide emailed Mr. Neftin that "we have had delays by our MIDS in processing payments to us and are working hard to correct the problems," adding that "it may take a few days yet (say early next week) before I can send you funds." On Friday, August 1, Mr. Heide emailed with the reassurance that "the anticipated funds are in processing now so we will send out the check today. Have a great weekend."

29. Despite Prime Line Nutra's statement on August 1 that it was sending a check that day, it in fact did not do so. While Nexus Group waited for the

promised check it continued to work for the Defendants, and on August 4 sent invoice N1296 for $24,338.

30. On August 6, Mr. Herro texted Blake Ruderman asking if Ruderman could "gauge a time frame of all this so we can set our payables around it." Blake Ruderman responded by text that they were "still sorting through this Alan will have an update for you guys before noon EST." Also on August 6 Mr. Neftin emailed Mr. Heide, copying Mr. Ruderman, requesting an update on the payments due for invoice N1276, which was then 15 days overdue, invoice N1282, 8 days overdue, and invoice N1286, one day overdue. These three unpaid invoices totaled $461,992.

31. Although he had claimed to be sending a check for invoice N1276 just six days before, in response to Mr. Neftin's email, on August 7 Mr. Heide sent the following email:

> Hi Chase and Jean,
>
> Please review the attached screenshots which show a steady decline in conversion rates from April to July. This decline has had a dramatic negative impact on our cash flow, which has impaired our ability to pay your affiliate invoices timely. We are in the process of investigating the true cause of this decline. Accordingly, as we discussed yesterday, please hold off on any more traffic until we can get our arms around this major problem. I will update you once I have more information.

Since then, Defendants have declined to make any payments at all. In accordance with Mr. Heide's instructions, Nexus Group promptly shut down the Prime Line Nutra/Biogenics advertising program.

32. On August 8 and 11 Blake Ruderman again promised that he would update on the status of payment, but he did not do so.

33. On August 12, 2014, Blake Ruderman told Mr. Herro that he had to speak with Carl Ruderman about the outstanding invoices.

34. By August 15, 2014, under Prime Line Nutra's agreement with The Nexus Group including weekly Net 15 terms, invoice numbers N1276, N1282, N1286 and N1291 were all past due. On August 15 counsel for the Nexus Group sent a letter to Mr. Ruderman and Mr. Heide demanding payment of $541,413 in unpaid and overdue invoices then owed by Prime Line Nutra for advertising provided by Nexus Group. Defendants have not substantively responded in the three weeks since.

35. On August 16, 2014, Mr. Herro spoke with Carl Ruderman who represented himself as having authority to speak on behalf of Prime Line Nutra. Carl Ruderman told Mr. Herro that the Defendants would not make payment Carl Ruderman again spoke with Mr. Herro about the payments due on September 13, 2014.

36. On October 10, 2014, Carl Ruderman texted Mr. Herro:

> Good morning Mr. Herro - just checking in to see if you and your associates might reconsider helping us improve our situation by allowing us to prepay for traffic while we right size the company.
>
> Will try to get a game plan for a repayment plan as soon as we possibly can.
>
> We are trying to get things right, and can use your help.
>
> Thank you. . . . CR

### ON OCTOBER 15, MR. HERRO TOLD CARL RUDERMAN THAT "WE CAN DO SOMETHING IF YOU GUYS PAY OFF SOME OF THE DEBT. WE'RE IN NEED OF CASH. AND THE $556K YOU GUYS OWE US IS REALLY HURTING US." NEITHER CARL RUDERMAN NOR ANY OTHER REPRESENTATIVES OF THE DEFENDANTS EVER RESPONDED.COUNT I: BREACH OF CONTRACT

37. Plaintiff repeats and incorporates by reference the facts and allegations set forth in Paragraphs 1 through 36 of this Complaint.

38. Nexus Group entered into a contract with the Defendants. The contract was formed by the writings and statements of the parties and by the conduct of the parties.

39. The contract was ratified and affirmed by the conduct and inducements of Defendants.

40. Nexus Group performed the contract fully.

41. The Defendants requested and accepted Nexus Group's performance.

42. By refusing to pay for the advertising provided by Nexus Group and utilized by Defendants since June 30, 2014, the Defendants have materially breached the contract.

43. Nexus Group has been injured by the Defendants' breach of contract.

### COUNT II: PROMISSORY ESTOPPEL

44. Plaintiff repeats and incorporates by reference the facts and allegations set forth in Paragraphs 1 through 43 of this Complaint.

45. In words and conduct, the Defendants promised to pay for the advertising provided by Nexus Group on Net 15 terms.

46. Defendants' promise to pay for the advertising provided by Nexus Group was clear and unambiguous.

47. Nexus Group relied on the Defendants' promise to pay for the advertising services.

48. Nexus Group's reliance was reasonable and foreseeable. The reasonableness of the reliance was confirmed by the Defendants' payments from May through July 19, 2014.

49. Nexus Group has been injured by the Defendants' refusal to pay for the remainder of the advertising provided as they had promised.

## COUNT III: UNJUST ENRICHMENT

50. Plaintiff repeats and incorporates by reference the facts and allegations set forth in Paragraphs 1 through 49 of this Complaint.

51. Defendants requested, encouraged, accepted and retained the advertising provided by the Nexus Group from April 14 through August 7, 2014.

52. The Defendants have refused to provide the agreed compensation, or any compensation, for the advertising provided from June 30 through August 7, 2014.

53. Plaintiff reasonably expected that Defendants would provide the agreed compensation for all the advertising provided.

54. Defendants have been enriched and have benefited from the advertising provided by Nexus Group.

55. The Defendants' enrichment has come at the expense of Plaintiff.

56. The circumstances here are such that in equity and good conscience Defendants should make restitution to plaintiff, in the amount invoiced for the advertising services.

## COUNT IV: QUANTUM MERUIT/QUASI-CONTRACT

57. Plaintiff repeats and incorporates by reference the facts and allegations set forth in Paragraphs 1 through 56 of this Complaint.

58. Plaintiff performed advertising services for Defendants in good faith.

59. The Defendants accepted Plaintiff's advertising.

60. Defendants agreed to compensate Nexus Group for the advertising. Defendant Biogenics establishing a pattern and practice of paying Nexus Group the amounts it invoiced Prime Line Nutra. Therefore Nexus Group expected to continue to receive compensation as it continued to provide advertising services.

61. The reasonable value of the services provided by Nexus Group from June 30, 2014 through August 7, 2014, is the amount set forth in invoices N1276, N1282, N1286, N1291, N1296, N1299 and N1300, totaling $568,632.

**WHEREFORE**, Plaintiff Nexus Group, LLC respectfully prays for judgment against defendants Prime Line Nutra, LLC and Biogenics Direct, LLC, as follows:

a) An award of damages in an amount not less than $568,632;

b) Statutory interest on the foregoing amount; and

c) Such other and further relief as the Court deems just and proper.

DENTONS US LLP

*Kiran Patel* (signature)

Kiran Patel
Dentons US LLP
1221 Avenue of the Americas
25th Floor
New York, New York 10021
Telephone: (212) 768-5392
Facsimile: (212) 768-6800
kiran.patel@dentons.com

Kenneth J. Pfaehler
1301 K Street, N.W.
Suite 600, East Tower
Washington, D.C. 20005
Telephone: (202) 408-6468
Facsimile: (202) 408-6399
kenneth.pfaehler@dentons.com

*Attorneys for Plaintiff*

Dated: November 26, 2014